UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Caleb Trainor and Isaac Trainor, on behalf of themselves and all others similarly situated,

Civ. No. 14-62 (PAM/JSM)

Plaintiffs,

v.

**MEMORANDUM AND ORDER**

Citibank, National Association,

Defendant.

---

This matter is before the Court on Defendant's Motion to Stay, or in the alternative for Partial Dismissal. For the reasons that follow, the Motion is denied.

**BACKGROUND**

Brothers Isaac and Caleb Trainor bring this putative class action claiming that Defendant Citibank's use of an automated dialing system that called Caleb's cellular telephone violates the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. As Citibank points out in seeking to dismiss Isaac from the case, the cell phone in question belongs to and is used solely by Caleb; the Complaint alleges that Isaac pays for the cell phone and Caleb reimburses him for the payments. (Compl. ¶ 15) According to the Complaint, Isaac is a "person affected by a violation" of the TCPA (id. ¶ 14), although there is no citation to a specific statutory section that allows such a person to sue under the TCPA.

The Complaint claims that Citibank "repeatedly and willfully contacted Plaintiffs' cellular telephone . . . using one or more automatic dialing systems." (Id. ¶ 20.) In

particular, Plaintiffs allege that Citibank called the cell phone using an automatic dialer at least seven times in the four years before the filing of the Complaint. (Id. ¶ 28.) The Complaint also alleges that Caleb demanded on at least three occasions that Citibank stop calling his cell phone, but that the calls continued. (Id. ¶¶ 40-42; 44-47.)

Plaintiffs purport to represent a class of similarly situated individuals throughout the United States. They ask for injunctive relief as well as statutory damages for what they allege to be negligent and willful violations of the TCPA. Citibank argues that the action should be stayed pending an FCC determination on the issue presented, and in the alternative contends that Isaac does not have standing to bring a claim under the TCPA and thus that he should be dismissed from the case.

**DISCUSSION**

Citibank seeks a stay of this action to allow the FCC to rule on several pending petitions that will determine whether Citibank's telephone equipment meets the definition of automatic telephone dialing system ("ATDS") in the TCPA. The TCPA defines ATDS as "equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers." 47 U.S.C. § 227(a)(1). The TCPA makes it unlawful to use such a dialing system to call a cell phone number unless the party being called has given his or her "prior express consent" to the call. Id.

Citibank denies that its equipment has the present capacity to generate and dial random or sequential numbers. According to Citibank, its dialing system does not use a random or sequential number generator, but rather draws telephone numbers from a database of Citibank customer information. Plaintiffs contend that Citibank's dialing system is a predictive dialer that the FCC has found to fall within the definition of the TCPA. If Citibank's dialing system is an ATDS, Citibank's calls to Caleb's phone violated the TCPA.

Whether a dialing system must have the present, as opposed to the theoretical, capacity to randomly or sequentially generate telephone numbers is the subject of six petitions pending before the FCC. According to Citibank, the FCC decision is imminent, although there is no timeline for a decision on this issue. Citibank emphasizes that three decisions have determined that a stay is appropriate in similar cases, pending the FCC's determination of the ATDS issue. Hurrle v. Real Time Resolutions, Inc., No. 13-5765, 2014 WL 670639, at *1 (W.D. Wash. Feb. 20, 2014); Mendoza v. UnitedHealth Grp. Inc., No. 13-1553, 2014 WL 722031, at *2 (N.D. Cal. Jan. 6, 2014); Glauser v. Twilio, Inc., No. 11-2584, 2012 WL 259426, at *3 (N.D. Cal. Jan. 27, 2012).

Plaintiffs argue that the FCC has already issued decisions that define ATDS to include a system such as Citibank's. According to Plaintiffs, the FCC in 2003 applied the ATDS definition to all predictive dialing systems, whether or not those systems also include a random or sequential number generator. See In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991, 18 F.C.C.R. 14014, 14090-93 (July 3, 2003). And Plaintiffs are correct that this FCC ruling discusses, in part, the very situation presented here.

3

The industry contended that predictive dialers did not fall within the statutory definition of ATDS because those dialers do not dial random or sequential numbers, but rather store numbers or receive numbers from a database. Id. at 14090. But the FCC disagreed, finding "that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." Id. at 14093. The FCC emphasized this determination in 2008: "In this Declaratory Ruling, we affirm that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." 23 F.C.C.R. 559, 566 (Jan. 4, 2008).

It may be that the FCC is poised to overturn its prior decisions, but given that this issue has been pending before the FCC for more than four years, when that new decision will issue is anyone's guess. See Glauser, 2012 WL 259426, at *2 (staying similar TCPA case pending FCC decision on predictive dialer issue and noting FCC's Notice of Proposed Rulemaking dated January 22, 2010). An indefinite stay is not in any party's interest.

Further, at this stage of the litigation, the Court cannot determine whether Isaac has standing to sue under the TCPA. The TCPA prohibits ATDS calls to a wireless telephone because the party called may be charged for the call. 47 U.S.C. § 227(b)(1)(A)(iii). Isaac has averred that he pays the bill on Caleb's cell phone. (Compl. ¶ 15.) Therefore, he was charged for calls Citibank made to Caleb's phone. Whether this status is sufficient to confer standing under the TCPA, however, will depend on further factual development.

**CONCLUSION**

Defendant has not established that an indefinite stay of this matter is warranted, nor has it established that Isaac must be dismissed.  Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion to Stay (Docket No. 14) is **DENIED**; and

2. Defendant's partial Motion to Dismiss (Docket No. 14) is **DENIED without prejudice**.

Dated: June 6, 2014

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge